**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ENGINE CAPITAL MANAGEMENT, LP,

Plaintiff,

-against-

ENGINE NO. 1 GP LLC; ENGINE NO. 1 NY LLC; ENGINE NO. 1 LLC; ENGINE NO. 1 LP; CHRISTOPHER JAMES; and CHARLES PENNER,

Defendants.

Civil Action No. 21-00149 (VM)

**FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, Engine Capital Management, LP ("Plaintiff"), by its attorneys Olshan Frome Wolosky LLP, hereby sues Engine No. 1 GP LLC ("Engine No. 1 GP LLC"), Engine No. 1 NY LLC ("Engine No. 1 NY LLC"), Engine No. 1 LLC ("Engine No. 1 LLC), Engine No. 1 LP ("Engine No. 1 LP"), Christopher James ("James") and Charles Penner ("Penner") (collectively, "Defendants"), and alleges on knowledge as to its own acts and otherwise on information and belief as follows:

**NATURE OF THE ACTION**

1. This is an action for injunctive relief, monetary damages and other appropriate relief for unfair competition in violation of the laws of the United States and common law, trademark infringement and injury to business reputation and dilution in violation of the laws of the State of New York. Plaintiff seeks an injunction, damages and related relief.

**PARTIES, JURISDICTION AND VENUE**

2. Plaintiff is a Delaware limited partnership with its principal place of business at 1345 Avenue of the Americas, Floor 33, New York, NY 10105.

3. On information and belief, Defendant Engine No. 1 GP LLC is a limited liability

company organized under the laws of Delaware and whose principal place of business is currently unknown, but whose agent for service is believed to be Cogency Global Inc., 850 New Burton Road Suite 201, Dover, Delaware 19904.

4. On information and belief, Defendant Engine No. 1 NY LLC is limited liability company organized under the laws of New York and whose principal place of business is currently unknown, but whose agent for service is believed to be Cogency Global Inc., 122 East 42nd Street, 18th Floor, New York, New York 10168.

5. On information and belief, Defendant Engine No. 1 LLC, is a limited liability company organized under the laws of Delaware and with its principal place of business at Four Embarcadero Center, Suite 3500, San Francisco, California 94111.

6. On information and belief, Defendant Engine No. 1 LP, is a statutory public benefit limited partnership organized under the laws of Delaware and with its principal place of business at Four Embarcadero Center, Suite 3500, San Francisco, California 94111.

7. On information and belief, Defendant James is an individual residing in the Bay Area of California. At all relevant times Defendant James held him out as the Managing Member of Engine No. 1 GP LLC, general partner of Engine No. 1 LP, and/or a founder, principal or legally responsible person or agent of Engine No. 1 GP LLC, Engine No. 1 NY LLC, Engine No. 1 LLC and Engine No. 1 LP.

8. On information and belief, Defendant Penner is an individual residing at 55 Hudson Street, Apartment 7C, New York, New York 10013. At all relevant times Defendant Penner held him out as a principal, authorized person, and/or legally responsible person or agent of Engine No. 1 GP LLC, Engine No. 1 NY LLC, Engine No. 1 LLC and Engine No. 1 LP.

9. Plaintiff has been injured and will continue to be injured in New York and in this

judicial district by Defendants' wrongful conduct.

10. This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367. Plaintiff's claims are predicated upon the Lanham Act, 15 U.S.C. § 1051, et seq., as amended (the "Lanham Act"), and substantial and related claims under the statutory and other common law of the State of New York. This Court has supplemental jurisdiction over the state claims under 28 U.S.C. § 1367 in that those claims are related to claims under this Court's original jurisdiction and form part of the same case or controversy under Article III of the United States Constitution.

11. This Court has personal jurisdiction over Defendant(s). On information and belief, Defendant(s) are located in the State of New York; transact, operate, conduct and/or carry on business within the State of New York; contract to supply goods and/or services in the State of New York; and/or have committed the wrongdoings alleged herein within the State of New York. Plaintiff has been injured and will continue to be injured in the State of New York and in this judicial district by Defendants' wrongful conduct.

12. Venue is proper in this district pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district and/or because Defendants are subject to personal jurisdiction in this district at the time this action is commenced.

**GENERAL ALLEGATIONS**

13. Plaintiff is a leading investment management firm. Since at least as early as July 1, 2013, Plaintiff used and continues to use its ENGINE CAPITAL service mark (the "ENGINE CAPITAL Mark") and ENGINE service mark (the "ENGINE Mark") (individually or collectively, the "ENGINE Mark(s)") for its management and investment services. At all times, the ENGINE Mark(s) have been owned exclusively by Plaintiff.

14. Plaintiff has gained particular notoriety and influence for its ENGINE-branded investment advisory services related to public markets and shareholder activism.

15. An activist shareholder is an active owner that engages with a public company and takes an active role in its direction by trying to influence its governance, its strategy, its operations, its mergers and acquisitions policies, the way it allocates capital, and its corporate policies, which may include environmental, social and diversity policies. In order to influence and effectuate these changes, an activist shareholder uses different tools including, among other things, public pressure, the nomination of candidates for the board of directors, and the running of proxy contests to seat these candidates to the board of the company. The ultimate goal of shareholder activism is to improve the companies and create shareholder value for all shareholders.

16. Plaintiff, identified as "Engine Capital" and "Engine," was included in the "Activist Top 10" list featured, respectively, in the (a) "2019 Activist Investing Annual Review"; and (b) the "2020 Shareholder Activism Insight" reports, both authored, published and/or co-branded by Schulte Roth & Zabel, a law firm, and Activist Insight. Activist Insight identifies itself as the preeminent supplier of information on activist investing and corporate governance worldwide (the "Schulte Roth/Activist Insight Reports"). *See* Exhibits A and B.

17. In relevant part, and most recent order, the Schulte Roth/Activist Insight Reports state:

(a) in excepts from the 2020 report:

> Each year Activist Insight creates a ranking of the most influential activists over the past year, based on the number, size, and performance of their activist investments, comprehensively derived from the *Activist Insight Online* database. The following categories have been used to create a points-based ranking of each activist for this year's list: number of companies publicly subjected to activist demands; average market capitalization of targeted companies; success of public demands; average 2019 annualized Total Follower Return*; and news stories written about the activist

on *Activist Insight Online* in 2019. To qualify, an investor must regularly employ an activist strategy and have publicly targeted three or more companies in 2019.

* * * * *

10

ENGINE CAPITAL

| | |
|---|---|
| COMPANIES PUBLICLY SUBJECTED TO ACTIVIST DEMANDS IN 2019: | 6 |
| AVERAGE TARGET MARKET CAP: | $1.4 BILLION |
| AVERAGE ANNUALIZED TOTAL FOLLOWER RETURN: | 78.8% |
| ACTIVIST INSIGHT ONLINE NEWS STORIES: | 11 |

Engine Capital was up 51.9% net of fees in 2019 and activism played an important part in achieving these returns, Arnaud Ajdler told Activist Insight.

Some of Engine's campaigns concluded quickly. Care.com sold itself to IAC a few months after the activist called for a sale, while PDL Biopharma announced it would monetize its assets following Engine's demand for a transaction. Aecom, where Starboard Value is also invested and gained board seats, sold its management services division after Engine asked for a breakup. Elsewhere, Engine gained board seats at Recro Pharma, a company that saw its stock triple in 2019, although it started 2020 on a weak note.

Some of Engine's campaigns are still works in progress. Its campaign for the sale of Harvard Bioscience is ongoing, while it has yet to publicly reveal its thesis at recent investment CymaBay Therapeutics. "Engine is currently in discussions with some of its portfolio companies and expects settlements or nomination in the near future," Ajdler told Activist Insight. That could make for a busy 2020.

(b) in excerpts from the 2019 report:

Each year Activist Insight creates a ranking of the most influential activists over the past year, based on the number, size, and performance of their activist investments, comprehensively derived from the *Activist Insight Online* database. The following categories have been used to create a points-based ranking of each activist for this year's list: number of companies publicly subjected to activist demands; average market capitalization of targeted companies; success of public demands; average 2018 annualized Total Follower Return*; and news stories written about the activist on *Activist Insight Online* in 2018. To qualify, an investor must regularly employ an activist strategy and have publicly targeted three or more companies in 2018.

* * * * *

08. ENGINE CAPITAL

| | |
|---|---|
| COMPANIES PUBLICLY SUBJECTED TO ACTIVIST DEMANDS | 4 |
| AVERAGE TARGET MARKET CAP | $461.0M |
| AVERAGE ANNUALIZED TOTAL FOLLOWER RETURN | -10.6% |
| ACTIVIST INSIGHT ONLINE NEWS STORIES | 14 |

Engine Capital saw success at all four companies it targeted in 2018, settling with each firm. The investor convinced Navigant Consulting to enlarge its share buyback plan, and gained four board seats in total at Hill International, Innerworkings, and Team. "Engine looks for undervalued businesses with good balance sheets where there are multiple levers for value creation," Managing Partner Arnaud Ajdler told Activist Insight, noting that the activist often engages privately before stepping back or increasing pressure depending on the company's reaction.

Ajdler reveals Engine is currently in discussions with some of its portfolio companies and expects to nominate directors at a number of them. "We certainly can expect more settlements and more board nominations in the near future," he said.

*See* Exhibits A and B. The Schulte Roth/Activist Insight Reports include references to Plaintiff,

as it is commonly known in the industry, as “Engine” and also include other prominent activists, such as Elliott Management, Carl Icahn and Starboard Value.

18. In addition, and again prior to 2020, Plaintiff received other preeminent industry accolades. In 2019, Plaintiff was named in the (a) the Top Performing Activist Hedge Funds by Preqin; and (b) the Top Performing Event Driven Strategies Hedge Funds by Preqin. *See* Composite Exhibit C. Preqin identifies itself as “the foremost provider of data, analytics, and insights to the alternative assets community.” *See* Exhibit D.

19. Plaintiff received a Top 10 ranking award from BarclayHedge in the equity long-bias category for 2019. *See* Exhibit E. BarclayHedge identifies itself as one of the leaders of alternative investment data and indices. *See* Exhibit F.

20. In 2017, Plaintiff also won the “Best Special Situations Fund (3 Years)” award from Wealth & Finance International, a service dedicated to providing institutional and private investors around the world with the latest industry news across both traditional and alternative investment sectors. *See* Exhibits G and H.

21. Plaintiff manages a family of ENGINE-branded funds (the “ENGINE-Branded Funds”), including but not limited to Engine Capital, LP, Engine Capital Offshore Fund, Ltd., Engine Jet Capital, LP, and Engine Airflow, LP. In addition, Plaintiff’s affiliate, Engine Investments, LLC, is the general partner of Engine Capital, LP and Engine Jet Capital, LP, and Plaintiff’s affiliate, Engine Investments II, LLC, is the general partner of Engine Airflow Capital, LP (such affiliates collectively with the Engine-Branded Funds, the “ENGINE-Branded Affiliates”).

22. Through its years of experience and successful investments, Plaintiff has become a reputable and influential participant in the investment management industry, particularly in the

activist space. Plaintiff and/or its ENGINE-Branded Affiliates have publicly published their views on dozens of public companies using the ENGINE Mark(s), thereby raising the public profile and reputation of Plaintiff and its ENGINE-Branded Affiliates in the investment community, including but not limited to the financial press, the media, the activist industry, board members and management of target companies, and investors, including public company shareholders and Plaintiff's and its ENGINE-Branded Affiliates' prospective and/or actual clients (collectively, the "Investment Community"). As a result of the reputation that Plaintiff has built for itself and its ENGINE-Branded Affiliates, Plaintiff and/or its ENGINE-Branded Affiliates have successfully negotiated board representation with many publicly-traded companies. This, in turn, has been critical to the success of Plaintiff's and its ENGINE-Branded Affiliates' businesses and the ability to attract clients into the ENGINE-Branded Funds.

23. Plaintiff markets its ENGINE-Branded Funds to institutional and retail high-net-worth investors.

24. Plaintiff and its ENGINE-Branded Affiliates refer to themselves as "Engine." Plaintiff and its ENGINE-Branded Affiliates are commonly and widely referred to and known as "Engine" in the activist and investment management industry. *See* Exhibits I, J, and K.

25. The Investment Community relies upon and has confidence in Plaintiff for its management services, including its shareholder activist services.

26. Plaintiff is the owner of U.S Trademark Application Serial No. 90453755 for ENGINE CAPITAL for the following services: Investment management services; Investment advisory services; Asset management services; Advisory services in the field of shareholder activism. *See* Exhibit L.

27. Plaintiff is the owner of U.S. Trademark Application Serial No. 90453764 for

ENGINE for the following services: Investment management services; Investment advisory services; Asset management services; Advisory services in the field of shareholder activism. *See* Exhibit M.

28. Plaintiff has made continuous use of its ENGINE Mark(s) at common law since at least as early as July 1, 2013. As a result of the exclusive and extensive use and promotion of the ENGINE Mark(s), the ENGINE Mark(s) have acquired enormous value and recognition. The ENGINE Mark(s) are well-known to the relevant consuming public and Investment Community as identifying and distinguishing Plaintiff exclusively and uniquely. Plaintiff's ENGINE Mark(s) are distinctive and have gained significant goodwill in the Investment Community, including the activist investment industry.

**Defendants' Infringing Activities**

29. Upon information and belief, Defendants, a new investment fund using activism and its principals, launched their business during or about December 2020. *See* Exhibit N. Defendants use ENGINE NO. 1 as a service mark and trade name in connection with Defendants' activist (and other) investment services that are identical or similar to Plaintiff's services. Defendants' use started long after Plaintiff commenced use of Plaintiff's ENGINE Mark(s) and after Plaintiff became a leader in the activist industry.

30. Defendants launched a website using the URL(s) www.engine1.com and www.engineno1.com (which redirects to www.engine1.com) (the "Engine1 Website"). The Engine1 Website uses ENGINE NO. 1 and Engine to promote activist and financial services and states, without limitation, that Engine No. 1 is "an investment firm purpose-built to create long-term value by harnessing the power of capitalism… [that] can engage as active owners to create value by focusing on this alignment." [*emphasis added*]. *See* Exhibit O.

31. Upon information and belief, Defendants are currently involved, as activists, in a potential proxy contest with Exxon Mobil Corporation. *See* Composite Exhibit P. In the press release announcing Defendants' nomination of directors to Exxon Mobil Corporation's board, the entity Defendants identify themselves as "Engine." Since its inception and long before Defendants commenced use of ENGINE NO. 1 or Engine, Plaintiff has used "Engine" to identify itself in other such proxy contests and press releases. For example. *See* Exhibit Q.

32. Upon information and belief, on October 20, 2020, Defendant Engine No. 1 GP LLC filed an intent to use trademark application Serial No. 90/267,238 with the U.S. Patent and Trademark Office for ENGINE NO. 1 in Class 36 covering generally and specifically, *inter alia*, (a) investment management services; (b) financial services, namely, providing investment management strategies in the fields of long and short equity, absolute return, low net market exposure, private and public debt, private and public equity, <u>and shareholder activism</u>; (c) financial information relating to <u>shareholder activism</u>, mergers, acquisitions, and corporate transactions, debt finance, debt trading and debt issuance; and (d) investment management services and financial services (the "ENGINE NO. 1 Application"). *See* Exhibit R. On information and belief, Defendants have made actual use of ENGINE NO. 1 as a service mark and/or uses Engine related to, without limitation, Defendants' activist services.

33. In fact, the Investment Community, including the financial press, perceives Defendants to be activists. *See* Exhibits S, T, U, V, and X.

34. Defendants' use of ENGINE NO. 1 and/or Engine in connection with its investment management services and activist efforts has caused and/or will cause confusion among the Investment Community. Further, third parties are likely to be confused as to the source of Defendants' services, likely believing that Defendants' services are in fact Plaintiff's services,

originate with Plaintiff, are an extension of Plaintiff or Plaintiff's business, and/or that Defendants and/or Defendants' services are otherwise affiliated or associated with and/or endorsed or sponsored by Plaintiff. For example, the potential of two activist firms running proxy contests under an "Engine" brand or services marks, in whole or in part, is confusing at best, if not misleading.

35. Defendants' use of ENGINE NO. 1 and/or Engine, including but not limited to on or in connection with the Engine1 Website, has already and/or will continue to cause initial interest confusion and/or actual confusion within the general public and/or the Investment Community.

36. Defendants' use ENGINE NO. 1 and/or Engine, including but not limited to on the Engine1 Website, to target the same clients that Plaintiff targets using the ENGINE Mark(s). Defendants market and/or will market its fund(s) to institutional and retail high-net-worth investors. *See* Exhibit W. This is the same target market as Plaintiff.

37. Upon information and belief, Defendants James and Penner are principals of Defendants Engine No. 1 GP LLC, Engine No. 1 NY LLC, Engine No. 1 LLC and Engine No. 1 LP, and control those Defendants.

38. Upon information and belief, Defendants James and Penner are, and at all times relevant to this Complaint have been, the moving, acting and conscious force who caused the direct infringement and wrongdoing that is at issue in this action.

39. Upon information and belief, Defendants James and Penner intentionally and purposefully directed and controlled the acts of Defendants Engine No. 1 GP LLC, Engine No. 1 NY LLC, Engine No. 1 LLC and Engine No. 1 LP, so that those Defendants use and have used ENGINE NO. 1 and/or Engine as described herein. Defendants James and Penner are thus personally liable for Defendants' infringement.

40. Defendants' wrongdoing and use of ENGINE NO. 1 and/or Engine for identical and/or related services unfairly competes with Plaintiff. By reason of Defendants' conduct, Plaintiff has been and continues to be harmed by Defendants' actions. Upon information and belief, Defendants have profited and/or will profit by its wrongful conduct and activities. Defendants' conduct has injured Plaintiff in an amount to be determined at trial and has caused and will continue to cause irreparable injury to Plaintiff. Plaintiff has no adequate remedy at law.

**COUNT ONE**
**(FALSE DESIGNATION OF ORIGIN OR SPONSORSHIP AND UNFAIR COMPETITION, 15 U.S.C. § 1125(a))**

41. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 40 above as if fully set forth herein.

42. Plaintiff's ENGINE Mark(s) are inherently distinctive and/or have acquired distinctiveness and secondary meaning in the marketplace.

43. Defendants' use of ENGINE NO. 1 and/or Engine is similar, and in some cases identical, to Plaintiff's ENGINE Mark(s).

44. Defendants' use and continued use of ENGINE NO. 1 and/or Engine, including on and in connection with the Engine1 Website or any other similar website and other marketing and promotional materials, without Plaintiff's consent, constitutes the use of false or misleading designations of origin and/or the making of false or misleading representations of fact in violation of 15 U.S.C. § 1125(a), in that, among other things, such use is likely to cause confusion, deception, and mistake among the consuming public and trade as to the source, approval, connection, association, or sponsorship of the goods and services advertised, promoted, distributed, circulated, sold and/or offered for sale by Defendants.

45. Defendants' acts constitute false designations of origin and/or sponsorship of

Defendants' goods and services and unfair competition in violation of 15 U.S.C. § 1125(a).

46. Defendants' acts complained of herein are willful and done with the intention of trading upon the valuable goodwill built up by Plaintiff, or otherwise injuring Plaintiff.

47. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered irreparable harm to the valuable ENGINE Mark(s). Unless Defendants are restrained from further infringement of the ENGINE Mark(s), Plaintiff will continue to be irreparably harmed.

48. Defendants' use of ENGINE NO. 1 and/or Engine is likely to cause confusion with Plaintiff's ENGINE Mark(s). Institutions and high-net-worth retail clients seeking to invest as limited partners in a private investment fund will likely believe that the private investment services offered by Defendants are sponsored by, associated with, or otherwise affiliated with Plaintiff. At a minimum, Defendants' use of ENGINE NO. 1 and/or Engine in promoting its private investment services will cause initial interest confusion among these clients. Defendants' use of ENGINE NO. 1 and/or Engine is also likely to cause confusion among companies being targeted by both activist funds. Boards and managements of those companies likely will believe that the proxy contests being led by Defendants are sponsored by, associated with, or otherwise affiliated with Plaintiff. At a minimum, Defendants' use of ENGINE NO. 1 and/or Engine in promoting its private investment services will cause initial interest confusion among these companies.

49. Defendants' conduct jeopardizes the goodwill symbolized by the ENGINE Mark(s), has injured Plaintiff in an amount to be determined at trial, and has caused and will continue to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

**COUNT TWO**
**(CYBERSQUATTING 15 U.S.C. § 1125(d))**

50. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 40 and paragraphs 41 through 49 above as if fully set forth herein.

51. Defendants have caused to be registered, registered, maintained the registration of, and/or used the domain names <engine1.com> and <engineno1.com> with a bad faith intent to profit from Plaintiff's ENGINE Mark(s).

52. The <engine1.com> and <engineno1.com> domain names are confusingly similar to the ENGINE Mark(s).

53. The ENGINE Mark(s) are distinctive and were distinctive at the time Defendants registered the <engine1.com> and <engineno1.com> domain names.

54. Defendants' conduct constitutes cybersquatting in violation of 15 U.S.C. § 1125(d).

55. Defendants' conduct jeopardizes the goodwill symbolized by the ENGINE Mark(s), has injured Plaintiff in an amount to be determined at trial, and has caused and will continue to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

**COUNT THREE**
**(COMMON LAW TRADEMARK INFRINGEMENT)**

56. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 40 and paragraphs 41 through 55 above as if fully set forth herein.

57. Defendants, with knowledge of and with intentional disregard of Plaintiff's rights, continue to advertise and promote goods and services using marks that are identical or confusingly similar to the ENGINE Mark(s).

58. Defendants' acts constitute willful trademark infringement of Plaintiff's exclusive rights in the ENGINE Mark(s), in violation of the common law of the State of New York.

59. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered irreparable harm to the valuable ENGINE Mark(s). Unless Defendants are restrained from further infringement of the ENGINE Mark(s), Plaintiff will continue to be irreparably harmed.

60. Defendants' misconduct has injured Plaintiff in an amount to be determined at trial

and has caused, and if not restrained by this Court, will continue to cause, Plaintiff serious and irreparable injury for which Plaintiff has no adequate remedy at law.

**COUNT FOUR**
**(INJURY TO BUSINESS REPUTATION; DILUTION N.Y. GENERAL BUSINESS LAW § 360-l)**

61. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 40 and paragraphs 41 through 60 above as if fully set forth herein.

62. As a result of Defendants' actions, Plaintiff is likely to suffer injury to its business reputation and Defendants' conduct constitutes likelihood of injury to business reputation or of the dilution of the distinctive quality of the ENGINE Mark(s) in violation of New York General Business Law § 360-l.

**WHEREFORE**, Plaintiff prays for relief and judgment against Defendants, as follows:

1. Defendant(s), and its/their affiliated companies, principals, officers, employees, directors, servants, agents, representatives, distributors, and all persons, firms and/or corporations in privity, under their control and/or in active concert or participation with Defendant(s) be temporarily, preliminarily and permanently enjoined and restrained from:

(a) Imitating, copying, infringing or making unauthorized use of the ENGINE Mark(s) or any mark confusingly similar to the ENGINE CAPITAL Mark or the ENGINE Mark, including ENGINE NO. 1;

(b) Causing actual confusion, a likelihood of confusion, injury to Plaintiff's goodwill, reputation and/or proven business success, and/or dilution of the distinctiveness of the ENGINE Mark(s);

(c) Registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or

        incorporating the ENGINE Mark(s), in whole or in part, including but not limited to ENGINE NO. 1, or any other mark that infringes or is likely to be confused with Plaintiff's ENGINE Mark(s), or any goods or services of Plaintiff, or Plaintiff as its source;

(d) Ordering that Defendants file with this Court and serve upon Plaintiff within thirty (30) days following this Court's entry of any injunction in this action, a written report, under oath, setting forth in detail the manner and form in which Defendants have complied with such injunction; and

(e) Engaging in any other activity, including the formation of other corporations, partnerships, associations or other entities or the utilization of any other devices, for the purpose of circumventing, evading, avoiding or otherwise violating the prohibitions set forth in subsections 1(a) through 1(d) above.

2. That Defendants be adjudged to have violated 15 U.S.C. § 1125(a);

3. That Defendants be adjudged to have violated 15 U.S.C. § 1125(d);

4. That Defendants transfer to Plaintiff the <engine1.com> and <engineno1.com> domain names and all other domain names it owns or controls that contain or are confusingly similar to the ENGINE Mark(s), or alternatively that such domain name(s) be forfeited or cancelled pursuant to 15 U.S.C. § 1125(d);

5. That Defendants be adjudged to have engaged in activities that are likely to dilute the distinctive quality of the ENGINE Mark(s) and/or injure Plaintiff's business reputation in violation of New York General Business Law § 360-l.

6. That Defendants be adjudged to have infringed upon the ENGINE Mark(s) in violation of the common law of the State of New York;

7. Directing that Defendants permanently remove and destroy all marketing, advertising, and commercials using ENGINE NO. 1 and/or Engine, or a modification thereof, or any other name, mark, logo, design, or the like confusingly similar thereto;

8. Awarding Plaintiff any profits obtained by Defendants associated with the acts described herein;

9. Awarding Plaintiff damages caused by Defendants' acts described herein;

10. Awarding Plaintiff the costs of this action and trebling any damages awarded to Plaintiff pursuant to 15 U.S.C. § 1117;

11. Awarding Plaintiff costs, expenses, and reasonable attorneys' fees as permitted by 15 U.S.C. § 1117;

12. Awarding Plaintiff pre-judgment interest; and

13. Granting such other and further relief as is just and proper.

Dated: New York, New York
January 29, 2021

Respectfully submitted,

Tamara Carmichael
Kyle C. Bisceglie
Kerrin T. Klein
Olshan Frome Wolosky LLP
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300
*Attorneys for Plaintiff*

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury for all issues so triable.

Dated: New York, New York
January 29, 2021

Respectfully submitted,

Tamara Carmichael
Kyle C. Bisceglie
Kerrin T. Klein
Olshan Frome Wolosky LLP
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300
*Attorneys for Plaintiff*